CARL T. DAVIDSON, RESPONDENT, v. TRENT O. HAGGARD AND CECILE F. HAGGARD, D/B/A SALTER OIL COMPANY, APPELLANTS.—236 S. W. 2d 405.

Kansas City Court of Appeals.   Opinion delivered December 4, 1950.

*Jayne & Jayne* for appellants.

*L. F. Cottey for respondent.*

SPERRY, C.—Dr. Davidson sued Mr. and Mrs. Haggard for damages incurred to his automobile by reason of the loss of oil due to negligent and faulty installation of an oil filter, and for loss of use of the automobile. Verdict and judgment were for plaintiff in the amount of $361.67. Defendants appeal.

Plaintiff is a physician. He resides near Kirksville and practices in that vicinity. He was a customer of defendants' filling station and, at about 9:30 p.m., October 5, 1949, he drove his car into the station and ordered an oil change and the installation of a new oil filter. The oil was drained, the used filter replaced with a new one, and 8 quarts of new oil put into the crank case of plaintiff's practically new Buick, which was in good mechanical condition. He drove the car toward his home for a distance of about 7 miles when it developed a knock in the engine, whereupon it was discovered that all except about 2 quarts of oil had escaped from the crank case through the top of the filter.

Plaintiff alleged, in his petition, that defendants, "in violation of their agreement and representations, as aforesaid, negligently and carelessly *selected and installed* * * * an oil filter which permitted the oil in plaintiff's said automobile to leak and * * *." (Emphasis added). Defendants contend that there was no evidence to support this charge. Of course, if that be true, plaintiff failed to make a submissible case.

Defendants' first contention is that the allegation is to the effect that a *defective* filter was installed and that, since there was no

evidence tending to prove that the filter which was installed was defective, no case was made. However, the allegation was broad enough to, and did, include the charge of negligence in the installation of a filter. All of plaintiff's evidence on the matter of negligence was directed to this point. Defendants' contention must be ruled adversely.

They next contend that, even though the filter was so negligently installed as to permit the oil to leak out through and around the top thereof, thereby causing bearings to be so damaged from lack of lubrication as to require their replacement, and causing other damage to the motor, defendants cannot be held liable for the reason that the filter was installed under the direct supervision of plaintiff and in strict accordance with his instructions. That point was warmly contested in the trial below. In fact, it was the sole issue presented to the jury by the respective parties, aside from the measure of damage instruction given for plaintiff.

The evidence on this point was in sharp conflict. Plaintiff testified to the effect that he stood near by while one of defendants' employees removed the used filter and installed the new, that when he placed the filter in its metal container, placed the metal top thereon, placed a rubber gasket over the bolt protruding through the top, and had partially screwed down the nut which tightens and seals the top of the filter so as to prevent leakage of oil, while tightening the nut with a wrench there was a popping sound; that the attendant said: "I believe it is tight enough"; that plaintiff answered: "Yes, don't strip the threads"; that he then got into the automobile, started and raced the motor; that two of defendants' attendants stood by the car, observing and testing the filter; that after the motor had operated for about two minutes it was stopped; that defendants' attendants inspected the top for oil leakage, found none, and closed the hood; that he paid his account and left, driving toward his home; that after driving a distance of about 7 miles the motor developed a knock and it was found that the top of the filter was loose; that all of the oil, except about 2 quarts, had leaked out thereby.

A mechanic, testifying for plaintiff, stated that the crank shaft and connecting rods were ruined because of lack of lubrication, and that the cylinder walls were also scored. He stated that the reasonable and actual cost of repairs was $291.67.

Defendants do not raise any question regarding the amount of the damage to the automobile, or that it was not caused from lack of lubrication due to loss of oil through leakage around the top of the filter. However, Mr. Wolf, defendants' attendant who was in charge of the station when the filter was installed (another attendant installed same under Wolf's direct supervision) stated that when the nut was being tightened there was a popping sound; that plaintiff shouted, in a loud and commanding voice, "What are you trying to do,

strip the threads?''; that he, Wolf, took the wrench from the other attendant and said that he did not believe it was tight enough; that plaintiff said: ''We will test it''; that plaintiff got into the car, started the motor and ran it for about 2 minutes; that after the motor was stopped he, Wolf, felt around the top of the filter and that no oil was leaking; that he did not again, at that time, tell plaintiff that he thought the top was not tight enough; that plaintiff was intoxicated and assumed to take charge of and direct the operation and that he just let him do it; that plaintiff told him at the station, two weeks later, that he did not blame defendants for what happened, that he was intoxicated and didn't know anything about an automobile. (Plaintiff denied this conversation).

The other attendant stated that plaintiff had ''plenty'' to drink on this occasion; that he, the witness, had never previously installed a filter on the type of car owned by plaintiff, and did so on this occasion under the direct supervision of Mr. Wolf; that he believed the popping sound was caused by the gasket having been placed crookedly and having suddenly straightened into place, causing it to pop; that when plaintiff shouted at him he was scared; that Mr. Wolf then took the wrench; that he stood by while the motor was being operated and the filter observed and inspected for leakage of oil.

Mr. Haggard testified to the effect that plaintiff was intoxicated and had a pint of whiskey in his car when he, and two employees, drove out on the road to see what plaintiff's motor trouble was, after the knock developed.

Two other young men testified for plaintiff. They stated that they passed plaintiff's parked car that night, stopped and waited until defendant came; that plaintiff was not drinking; that they saw no whiskey or evidence of intoxication; and that plaintiff, driving his own car slowly behind them, followed their car to his home after oil was added by defendants.

In rebuttal plaintiff denied having been drinking, either when at the station or later that evening. He stated that he had been to the hospital at Kirksville immediately before going to the service station; and that he then left for his home, and to attend a childbirth case, and was on his way there when his motor failed.

In view of the conflicting testimony as to what was said and done regarding the tightening of the nut which held the top of the filter and sealed it against leakage, and of the testimony concerning the noise when it straightened out and slipped into place, we are unable to say that the negligence which caused the damage was, or was not, the result of plaintiff's own actions and instructions. That was a question for the jury. The issue was fairly submitted, under instructions offered by, and given for, each of the parties; and the jury has resolved the question in favor of plaintiff.

It is next urged that there was no proof of defendants' failure to sufficiently tighten the top of the filter so as to prevent oil leakage. It is contended that plaintiff failed to offer any evidence tending to prove that no one else had tampered with the filter.

It is true that no witness gave direct testimony to that effect. However, the undisputed and positive testimony of plaintiff was to the effect that after the filter was installed he paid the bill and started directly home, because he had a confinement case to attend; that after proceeding a distance of about 7 miles the motor began to "knock"; and that he then discovered that the engine was bathed in oil. It may be inferred that no one had tampered with the filter after defendants installed same.

Furthermore, defendants' chief attendant stated that he did not think the top of the filter was tight enough when the hood was closed, but that he did not so inform plaintiff because plaintiff had assumed to order the method and manner that the installation should be performed and ordered defendants' attendant about the work.

Another of defendants' attendants stated that he thought the oil leaked through the top of the filter, that the top had not been tightened sufficiently when the "popping" sound was heard; and that it was not further tightened thereafter.

The case was tried by both parties on the theory that the filter top was not sufficiently tightened at the station. Defendants contended that it was not so tightened because of plaintiff's intervention and assumption of control of the operation. We hold that there was substantial evidence for the jury to have found that the damage resulted from the negligence of defendants in the installation of the filter.

Under plaintiff's measure of damages instruction the jury was told that it might "* * * take into consideration the reasonable value of any necessary repairs, if any, made upon plaintiff's automobile, * * *."

Defendants contend that the instruction is fatally erroneous. The correct measure of damages in cases affecting personal property is the difference in value before and after injury. Conner v. Aalco Moving & Storage Co., 218 S. W. 2d, 830, 831. However, "such difference may be shown by the cost to repair and restore." Conner v. Aalco, supra, 832.

An instruction, almost identical in wording and phraseology with the instruction here reviewed, was considered and approved in Lindenlaub v. Ozora Marble Quarries Company, 70 S. W. 2d, 1110. However, the precise objection here made was not presented in that case. In Brown v. Zorn, 275 S. W. 573, it was held that the correct measure of damages in this kind of case is that contended for by defendants; but the court also held that a plaintiff may elect to base his recovery upon the necessary outlay to repair the injury. The

court pointed out that if such repairs failed to restore the vehicle to its full previous value, or made it of greater value, appropriate reduction, or increase, should be made in the verdict. In Bauer v. Fahr, 282 S. W. 150, an instruction similar to that in the instant case was approved. In Gilwee v. Pabst Brewing Company, 193 S. W. 886, 887, we held that, ''* * * in measuring the damages to an automobile, the basic rule is just compensation for the actual loss sustained, * * *,'' and that plaintiff was entitled to recover the reasonable cost of repair plus the amount of deterioration, if any. In General Exchange Ins. Corp. v. Young, 206 S. W. 2d, 683, 691, it. was held that a plaintiff is entitled to recover the reasonable cost of repairs, with equitable increases or deductions, in accordance with the increased or deteriorated value of the automobile after repair.

The instruction in that case permitted recovery of ''such sum as * * * will fairly and reasonably compensate'' for damages. The court held that the only evidence of damages was the cost of repairs, and said: ''The jury reached approximately the right result without any guidance from the court. The error (the instruction) was harmless.'' That opinion was approved by the Supreme Court, 212 S. W. 2d, 396, 398.

In the case at bar, according to allegations in the petition, admitted in the answer, the automobile was virtually new, in good mechanical condition, prior to the injury. The reasonable cost of repairs, *made necessary by the injury,* and paid by plaintiff, was the amount found by the jury, according to the uncontradicted evidence. That was all of the damage claimed, or of which any evidence was offered.

The form of the instruction is not approved but, since defendants were not prejudiced thereby, the judgment should be affirmed. *Bour, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.